Bonham Strand LLC v Vidarte (2024 NY Slip Op 50012(U))

[*1]

Bonham Strand LLC v Vidarte

2024 NY Slip Op 50012(U)

Decided on January 4, 2024

Justice Court Of The Village Of Dobbs Ferry, Westchester County

Koenigsberg, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 4, 2024
Justice Court of the Village of Dobbs Ferry, Westchester County

Bonham Strand LLC, Petitioner-Landlord,

against
Veronica Vidarte & KERRI QUINN, Respondents-Tenants.

Index No. 23100052

David A. Koenigsberg, J.

Petitioner commenced this "non-payment holdover" eviction proceeding against Respondents, seeking a money judgment in the amount of $4,072.00. The Petition alleges that there was due to the landlord from respondent tenant rents and fees as follows:
September 2023 bal. Rent $1,160.00
October 2023 Holdover Rent $2,312.00
Lease violation — added Pet fees $600.
Respondent has defaulted in the payments thereof and the total rent in arrears is $4,072.00
Petition ¶ 5.
Respondents leased and continue to occupy Apt. 3N, 2 Main Street, Dobbs Ferry, NY, pursuant to two one-year leases from October 1, 2021 to September 30, 2023. Petitioner Ex. 2 (Lease). On October 4, 2023, Petitioner accepted payment from Respondents in the amount of $2,312 in payment of rent for September 2023. Petitioner Ex. 11.
Respondents answered and asserted defenses that Petitioner violated the warranty of habitability due to the presence of black mold in the walls and ceiling, an unsafe and unrepaired balcony, no heat and hot water, retaliation and harassment. Respondents have also counterclaimed for lost income for missing work due to court appearances, and medical bills incurred due to illnesses caused or exacerbated due to lack of heat.
A summary trial hearing was held on December 14, 2023. Dickon Tong, President of Petitioner testified for Petitioner and Veronica Vidarte and Kerri Quinn testified for Respondents. All parties appeared pro se.
The following documents were introduced into evidence:
Petitioner's Exhibits (admitted): 1, 2, 4, 5, 7, 8, 11, 12, 13; 14; the following Petitioner Exhibits were marked but not admitted: 3, 6, 9, 10,
Respondents' Exhibits (admitted): A (appended to Pet. Ex. 1); C, D, F, G, H, I, J, K, L, Q, O; the following Respondent Exhibits were marked but not admitted: B, E, M, N, P,
FINDINGS OF FACT AND CONCLUSIONS OF LAW
The parties entered into a lease on September 22, 2021, for a one-year term from October 1, 2021, to September 30, 2022. The lease was extended for one year from October 1, 2022, to September 30, 2023 when Respondents executed the Renewal Lease Form in response to the form Notice of Renewal of Lease Form Issued Under Section 2523.5(a) of the Rent Stabilization Code tendered by Petitioner to Respondents. Exhibit 1. A rider to the initial lease prepared by Respondents and signed by Petitioner required Petitioner to repair broken boards on the porch, sterilize and clean the bathtub and bathroom, and sterilize and deep clean the apartment before the move in date. Respondent Ex. A.
Tong testified that he tendered a lease renewal form to Respondents 90 days before September 30, 2023, but Respondents did not accept the renewal offer within 60 days. Therefore, according to Petitioner, Respondents are holdover tenants, having failed to vacate the premises after their lease expired.
Respondent's Exhibit O is a 7-page email string that includes emails from September 11, 2023 to September 15, 2023. An email from Petitioner to Respondent sent on September 11, 2023 at 9:47 AM, is entitled "Lease Non-Renewal Letter." This email purported to notify Respondents that the lease was not being renewed, the lease was expiring on September 30, 2023, and "will not be renewed. You are required to vacate the premises no later than midnight on this date." See also Petitioner Ex. 8. Respondent Quinn responded the same day at 9:57 AM, "Hello we signed our lease renewal, I'm confused?" Exhibit O. On September 12, 2023, at 10:24 AM, Petitioner wrote in response: "Never receive it, forward a copy of your certified mail." At 2:08 PM, Quinn wrote "I'm again confused, last year we put in box and all was okay. We received months ago, signed and placed again. We didn't certify mail it last year. I have only the copy I took on my phone like last year." In response at 3:20 PM, Petitioner insisted that Respondents provide proof of certified mailing. Exhibit O.
Petitioner did not offer into evidence a copy of the lease renewal form or any proof that it was sent to Respondents by certified mail.
Based on the foregoing, the Court finds that Respondents in fact accepted Petitioner's offer of a one-year extension through September 30, 2024. Thus, Respondents are not holding over but are entitled to stay in Apartment 3N through September 30, 2024, at the rate of $2,335 per month from November 1, 2023.
The evidence at trial demonstrates by a preponderance of the evidence that Petitioner emailed the lease termination notice on September 11, 2023, in retaliation for Respondents making complaints about the poor condition of the apartment to the State of New York, Division of Housing and Community Renewal, Office of Rent Administration on August 30, 2023. Respondents' Exhibit F, page 1; Exhibit G.
Petitioner also retaliated against Respondents in other ways. On October 15, 2023, Tong harassed Respondent Vidarte by chasing her from the building while she went to her car to go to work. He shouted at her, accused her of not being a tenant in the building, and followed her down the street to her car, yelling at her. Petitioners' Exhibit Q (photos of Tong taking pictures of Vidarte); Petitioner Exhibit 14 (photo by Tong of Vidarte in her car).
Petitioner's President Tong also harassed Vidarte by addressing her with a racial slur, calling her a "yellow skinned woman with black hair."
On August 16, 2023, a water leak in the floor of Apartment 3N caused the ceiling in the bedroom of Apartment 2N to collapse. Tong blames a leak from a window unit air conditioner installed by Respondents as the cause of the water damage and ceiling collapse. Tong sent notice [*2]to Respondents that they were responsible for the damage and had to fix it at their cost. Respondent Quinn testified that she had a consultant examine the ceiling damage and he concluded that the ceiling collapse was the result of structural damage caused by years of water damage that had been repaired haphazardly. Testimony of Respondent Quinn, December 14, 2023 at 6:30 PM.[FN1]
Quinn testified that after the ceiling collapse on August 16, 2023, she removed the air conditioner, but that water continued to leak into the room below for many days after the air conditioner was removed. Quinn also testified that she had installed 3 room air conditioners in the summer of 2022 and 2023 and Tong never objected or ordered her to remove them.
Petitioner also retaliated against Respondents by refusing to restore the heat and hot water to the apartment when Respondents complained about lack of heat and hot water in early November. In response to findings by the Village of Dobbs Ferry's Building Department that there was inadequate heat in the building, Petitioner informed the Village that Petitioner was trying to evict Respondents and as such they had no right to complain.
This should not be a violation. People who filed this complaint at apt 3N are Trespassing on our property without a lease (holdover 3 mo). Heating system was not been winter serviced and we are not spending more $ on maintenance/repairs in the process of evicting these trespassers.
People v. Bonham Strand, Verdict and Judgment, Docket Nos. 23110021, 23110022 (Dobbs Ferry Justice Court Dec. 14, 2023) (guilty verdict by default for failing to provide heat and hot water) (quoting email from Petitioner to Dobbs Ferry Village Fire Inspector, Nov. 3, 2023, at 2:07 PM).
According to Quinn, while the heat was restored after the Court directed Tong to do so on November 16, 2023, it was sustained for only a few days and the apartment did not have adequate heat until early December. Indeed, the Village Building Inspector testified in the Village Code enforcement cases, Docket Nos. 23110021, 23110022, that he observed inadequate heat in the apartment on December 4, 2023.
Petitioner's refusal to promptly restore heat to Respondents' apartment on November 8, 2023, until ordered to do so by the Court on November 16, 2023, clearly manifests retaliatory animus and the deliberate failure to provide heat and hot water. In fact, although Respondents occupied the apartment for two years pursuant to a written lease agreement, Petitioner repeatedly in open court informed the Court that Respondents had no right to heat and hot water as they were "trespassers," so "why should we spend extra money to repair" the heating system for the "trespassers." Recording of Status Conference, November 16, 2023 at 9:40 AM to 9:50 AM.
Respondents also testified that the deck outside their apartment has been unusable and was condemned by the Village. In fact, there has been pending in this Court a code enforcement action against Petitioner because the Building Inspector found that the exterior stairways and decking are in severe disrepair creating a dangerous situation. People v. Bonham Strand LLC, [*3]Docket No. 23070020. Despite a Notice of Violation issued by the Building Inspector in July 2023, Petitioner has failed to make the required repairs. That disrepair has deprived Respondents of the use of the exterior deck adjacent to their apartment.
Tong denies that Petitioner retaliated against Respondents, denies that he harassed Vidarte, denies that he addressed her with a racial slur, denies that Petitioner failed to provide adequate heat or hot water, and denies that their deck is unusable. The Court does not credit Tong's testimony. Based on his testimony in this matter, as well as in other related matters in which he has appeared in this court, the Court finds that Tong is not credible and is an unreliable witness. As stated in an order by the Town of Greenburgh Justice Court, Tong has a history of making "gross misrepresentations" in court. See Bonham Strand LLC v. Paredes, 57 Misc 3d 1217(A) *3, n. 2 [Justice Ct Town of Greenburgh 2017]. As a result, the Court does not credit Tong's denials and instead in those instances where Tong's version of events differs from Quinn's or Vidarte's, the Court credits Respondents' testimony and evidence.
CONCLUSION
Base on the foregoing, the Court holds that the petition is dismissed for any and all of the following reasons:
Petitioner's claim that Respondents are holdover tenants is rejected. Respondents timely responded to Petitioner's 90-day lease renewal notice. The lease was in fact renewed for a term beginning on October 1, 2023 and ending September 30, 2024. Respondents are entitled to occupy Apartment 3N pursuant to the renewed lease agreement until September 30, 2024 at the rate of $2,335 per month as of November 1, 2023.
With regard to the unpaid rent for October, November and December, the court finds as follows: the Petition alleges that Respondents owed $1,160 for September, and $2,312.00 for October, but because Respondents paid Petitioner $2,312 on October 4, 2023, the unpaid balance for October is $1,160. The rent due for November and December 2023 and January 2024 is $2,335 per month or $7,005. That amount plus $1,160, leaves a balance due of $8,165 for rent through January 31, 2024.
Respondents have asserted and proved their affirmative defense that Petitioner has breached the warranty of habitability. First, Petitioner breached the warranty of habitability by failing to provide adequate heat for most of November and part of December. This results in a rent abatement for 5 weeks, totaling $2,918.75. In addition, Petitioner has failed to timely repair the outside decking and stairs since at least July 2023, which has resulted in a reduction in the value of Respondents' tenancy for at least five months. This results in a rent abatement in the amount $1,751.25. As a result, the total rent abatement is $4,670.00. The net amount due for rent through January 31, 2024, is $3,487.00.
In addition, Petitioner's retaliatory actions merit dismissal of the petition for possession, but Respondents are still responsible to pay for the rent as above. Respondents can pay the rent due in the amount of $3,495.00 on or before January 17, 2024, to Petitioner, or to the Court, via bank check or postal service money order payable to the Dobbs Ferry Village Court. Upon receipt of this payment, the Court will provide notice to Petitioner which can apply to the Court for payment over to Petitioner.
Petitioner's claims for penalties and fees as set forth in Exhibit 11 are denied, as they are not recoverable in a summary proceeding. Real Property Actions and Proceedings Law § 702(1) [*4](In a proceeding relating to a residential dwelling or housing accommodation, the term "rent" shall mean the monthly or weekly amount charged in consideration for the use and occupation of a dwelling pursuant to a written or oral rental agreement. No fees, charges or penalties other than rent may be sought in a summary proceeding pursuant to this article, notwithstanding any language to the contrary in any lease or rental agreement.") (Emphasis added).
Respondents' counterclaims for lost income and impaired health are denied without prejudice.
Based on the foregoing, the Court hereby orders:
(1) the Petition is dismissed with prejudice;
(2) Respondents are entitled to continue to occupy the subject premises pursuant to a renewal lease at the rate of $2,335 per month through September 30, 2024, and retain all rights as tenants in a dwelling subject to the Rent Stabilization Code (lease renewal rights for 2024-2025); and
(3) Respondents may pay $3,495.00 for rent due through January 31, 2024 to Petitioner on or before January 17, 2024, or to the Court via bank check or postal service money order payable to the Dobbs Ferry Village Court on or before January 17, 2024.
The foregoing constitutes the judgment of the court.
Dated: January 4, 2024.
David A. Koenigsberg
Dobbs Ferry Village Justice

Footnotes

Footnote 1:Petitioners' Exhibit M are photographs allegedly taken by the consultant. The photographs were not admitted in evidence as the court sustained Petitioner's objection. Quinn's testimony describing the consultant's findings came in direct response to Petitioner's question to Quinn on cross-examination when Tong asked her "What did he tell you?"